UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| DREW HAMILTON CLARK, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 4:25-cv-00273-SRC |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

**<u>Memorandum and Order</u>**

Drew Hamilton Clark moves the Court to vacate his sentence under 28 U.S.C. § 2255. *Clark v. United States*, 4:25-cv-00273-SRC (E.D. Mo. Mar. 4, 2025), doc. 1 ("Civ. doc."); civ. doc. 11. Clark raises two statutory claims, thirteen ineffective-assistance-of-counsel claims, three prosecutorial-misconduct claims, and three claims of various miscellaneous errors. *See generally* civ. doc. 11. Having carefully reviewed the full record, the Court finds that Clark fails to demonstrate entitlement to relief or an evidentiary hearing. The Court therefore denies his Motion. Civ. doc. 1, 11.

## I.     Factual background

The Eight Circuit Court of Appeals summarized the facts as follows:

> Within a few hours on May 26, 2021, using a stolen handgun, Drew Clark committed three car thefts, entered two homes and a manufacturing campus where he stole personal items and terrorized a homeowner, and struggled with police officers who attempted to arrest him. A jury convicted Clark of possessing a stolen firearm in violation of 18 U.S.C. § 922(j), three counts of carjacking in violation of 18 U.S.C. § 2119, and three associated counts of brandishing a firearm during the carjackings in violation of 18 U.S.C. § 924(c)(1)(A)(ii). The district court[] sentenced him to 339 months imprisonment.
>
> . . .

The first car theft on the day in question occurred at the Buzzi Unichem terminal in St. Louis, where tanker trucks are loaded to haul cement. A fence surrounds the facility on all sides; there is only one entry and exit point. About 11:30 a.m., employee Daniel Becker noticed an unfamiliar vehicle parked on the worksite. Becker and others then saw someone in a contractor's pickup try to leave the site by driving through a ditch and into a neighboring business facility. Becker and others pursued in two vehicles and trapped the pickup by blocking the facility exit. The thief abandoned the pickup, climbed over a fence back onto the Buzzi site, and entered an unlocked Dodge Ram that was kept with the keys inside as a "yard truck" used as needed for work purposes. The thief began driving the Dodge Ram toward the Buzzi exit. Becker drove back to that exit and blocked it with his vehicle. Reaching the exit, the thief pointed a gun at Becker who decided the "truck ain't worth saving" and moved out of the way. The thief left the Buzzi facility in the Dodge Ram. The jury found that Clark was the thief and convicted him of carjacking (Count 2) and brandishing a firearm against Becker (Count 3).

Clark then drove the Dodge Ram to the Soulard neighborhood where he entered the home of Andrew Paniello and stole multiple items, and then entered the nearby home of T.G., an oncology social worker pursuing a doctorate in social work. T.G. testified that she returned home around 12:30 p.m. As she entered her living room, her golden retriever stood up and looked toward the back door. When T.G. looked in that direction, she saw an intruder (Clark) standing outside the glass door and began screaming. Clark came inside. T.G. ran to the front door to escape. Clark caught her, held a gun to her head, and asked how much money was in her wallet. T.G. said none, pointed to car keys she dropped while running, and told Clark he could take them. Clark forced T.G. into a bathroom at gunpoint, bound her hands tightly with zip ties, briefly left T.G. alone in the bathroom with his gun, then returned and retrieved the gun, leaving T.G. bound in the bathroom with the door closed. Afraid to leave the bathroom, T.G. used her cell phone to send text messages telling a friend, her husband, and neighbors what had happened. A friend called to tell her that police were outside the home. T.G. ran outside. The police cut off her zip ties; her car keys and white Jeep Cherokee were missing. For T.G.'s harrowing experience, the jury convicted Clark of carjacking (Count 4) and brandishing a firearm (Count 5).

After leaving T.G.'s home in her Jeep, Clark drove to the Purina-Nestle manufacturing campus and began stealing personal items from Purina employees. An employee noticed clothes missing, spotted Clark wearing one of his work shirts, and told a security officer. Clark ran away, pursued through the parking lot by security officers and the employee. Clark drew his gun and pointed it at the employee. He saw Purina engineer Maneesh Anand getting into his Subaru Impreza in the parking lot. Clark said, "Give me your keys or I will shoot." Anand exited his car, saw Clark pointing a gun at him, and gave Clark the keys to the Subaru when Clark again said he would shoot if Anand did not comply. Clark fled the Purina campus in Anand's Subaru. For this car theft at gunpoint, the jury convicted Clark of carjacking (Count 6) and brandishing a firearm (Count 7).

2

Shortly after Clark left the Purina campus, police discovered Anand's abandoned Subaru and came upon Clark nearby. Clark fled as they approached, then struggled when the officers caught up and attempted to arrest him. Transported to a hospital for evaluation, police discovered a gun concealed in Clark's pocket bearing the serial number of the gun Clark had stolen four days earlier. The jury convicted Clark of knowingly possessing a stolen firearm (Count 1).

*United States v. Clark*, 115 F.4th 895, 896–98 (8th Cir. 2024).

## II.    Procedural background

### A.    Criminal proceedings

In July 2021, a federal grand jury returned a seven-count indictment against Clark: one count of possessing a stolen firearm, three counts of carjacking, and three counts of brandishing a firearm in furtherance of a crime of violence. Indictment, *United States v. Clark*, 4:21-cr-00399-SRC (E.D. Mo. July 14, 2021), docs. 1–2 ("Crim. doc."). Clark pled not guilty. Crim doc. 8. Clark waived his right to file pretrial motions, crim. doc. 43, and twice waived his right to a speedy trial so that his attorney could investigate his medical history, crim. docs. 46–47, 49–50. The Court granted Clark's motions, continuing trial until January 9, 2023. Crim. docs. 48, 52.

In late December 2022, the Court held a *Frye* hearing, where the Assistant U.S. Attorney explained that the United States extended a formal plea offer to Clark. Crim. doc. 125, *Frye* Hr'g Tr. at 3:11–10:20. At the *Frye* hearing, the Court confirmed that Clark understood the United States' offer. *Id.* at 5:12–13:17. Clark rejected the offer and expressed a desire to go to trial. *Id.* at 12:1–13:11. Trial then started on January 9, 2023, crim. doc. 126, and lasted five days, crim. docs. 127, 128, 129, 130.

After the close of the evidence on the fourth day of trial, "Clark moved for judgment of acquittal on all counts." *Clark*, 115 F.4th at 898; crim. doc. 129, Trial Tr. at 302:11–303:19. The Court orally denied the motion on all counts, *Clark*, 115 F.4th at 898, except for Count 2 and

3

3 where the Court found a "substantial and meaningful issue" as to when the forceful taking of the Dodge Ram from the Buzzi Unichem terminal occurred, crim. doc. 129, Trial Tr. at 310:7–315:17.  The Court "reserved decision and ordered supplemental briefing on Counts 2 and 3." *Clark*, 115 F.4th at 898.  The jury convicted Clark on all counts, crim. doc. 94, and in a written post-trial order, the Court denied Clark's motion for acquittal as to Counts 2 and 3, crim. doc. 99.

In May 2023, the Court sentenced Clark to 339 months of imprisonment followed by a five-year term of supervised release.  *See* crim. doc. 113; *see also* crim. doc. 114 at 3–4.  But before imposing its sentence, the Court confirmed that Clark was fully satisfied with the services provided by his defense counsel at trial.  Crim. doc. 133, Sent'g Hr'g Tr. at 3:3–3:7.  After sentencing, Clark appealed, *see* crim. doc. 118, "contending the evidence [was] insufficient to convict him of Counts 2 and 3 (the Buzzi incident) and Counts 4 and 5 (the ordeal at T.G.'s home)," *Clark*, 115 F.4th at 898.  The Eighth Circuit affirmed the Court's judgment, *id.* at 901, and denied Clark's request for rehearing, crim. doc. 139.  Clark is currently serving his sentence at FCI Thomson in Illinois with a projected release date of June 22, 2045.[1]

### B.    Civil proceedings

In March 2025, Clark timely filed a motion to vacate his sentence under 28 U.S.C. § 2255.  Civ. doc. 1.  After various extensions, civ. docs. 7, 9, Clark filed his Amended Motion, doc. 11, which is now ripe for the Court's review.

### III.    Standard

### A.    Section 2255

Under section 2255, a federal prisoner "may move the court which imposed [his] sentence to vacate, set aside or correct the sentence" on the grounds that the court imposed "the

---

[1] Find an inmate, Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited June 4, 2026).

sentence . . . in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a).  If a petitioner claims his sentence violates the Constitution or laws of the United States, the petitioner must establish that the violation constitutes "a fundamental defect which inherently results in a complete miscarriage of justice." *United States v. Gomez*, 326 F.3d 971, 974 (8th Cir. 2003) (first quoting *United States v. Boone*, 869 F.2d 1089, 1091 n.4 (8th Cir. 1989); and then citing Fed. R. Crim. P. 32(d) advisory committee notes to the 1983 amendments).  Generally, to obtain section 2255 relief based on a claim, a petitioner must have raised the underlying error on direct appeal.  *See Roundtree v. United States*, 885 F.3d 1095, 1097 (8th Cir. 2018).  If a petitioner failed to do so, the Court considers the claim procedurally defaulted, rendering it ineffective in establishing a right to section 2255 relief.  *See id.*

Three exceptions to this general rule exist.  First, "if the error is jurisdictional, the error may be raised on collateral review without being subjected to procedural default analysis." *United States v. Mooring*, 287 F.3d 725, 727 (8th Cir. 2002).  Second, if a petitioner raises a constitutional claim, the Court does not consider the claim procedurally defaulted if the petitioner shows cause for the default and actual prejudice.  *See Anderson v. United States*, 25 F.3d 704, 706 (8th Cir. 1994); *Reid v. United States*, 976 F.2d 446, 448 (8th Cir. 1992).  This "cause and prejudice exception does not apply to nonconstitutional or nonjurisdictional claims that could have been but were not raised on direct appeal." *Anderson*, 25 F.3d at 706 (first citing *Brennan v. United States*, 867 F.2d 111, 120 (2d Cir. 1989); and then citing *Bontkowski v. United States*, 850 F.2d 306, 313 (7th Cir. 1988)).  Finally, the Court "will consider a claimed error that could have been raised at trial or on direct appeal if the alleged error was a fundamental

miscarriage of justice." *Id.* (citing *Ramey v. United States*, 8 F.3d 1313, 1314 (8th Cir. 1993) (per curiam)). This exception, however, "applies only when a petitioner shows by clear and convincing evidence that, but for an alleged constitutional error, no reasonable juror would have found the petitioner guilty," *id.* at 706–07 (citing *Wallace v. Lockhart*, 12 F.3d 823, 827 (8th Cir. 1994)), and extends only to claims of factual innocence, *id.* at 707 (first citing *Narcisse v. Dahm*, 9 F.3d 38, 40 (8th Cir. 1993); and then citing *Ramey*, 8 F.3d at 1314).

If the petitioner's claims are not procedurally barred, the Court must hold an evidentiary hearing to consider the claims "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *see also Shaw v. United States*, 24 F.3d 1040, 1043 (8th Cir. 1994). A petitioner is entitled to an evidentiary hearing "when the facts alleged, if true, would entitle [the petitioner] to relief." *Payne v. United States*, 78 F.3d 343, 347 (8th Cir. 1996) (quoting *Wade v. Armontrout*, 798 F.2d 304, 306 (8th Cir. 1986)). However, a court may dismiss a claim without a hearing "if the claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based." *Shaw*, 24 F.3d at 1043 (citing *Larson v. United States*, 905 F.2d 218, 220–21 (8th Cir. 1990)).

## B. Ineffective assistance of counsel

A petitioner may raise an ineffective-assistance-of-counsel claim for the first time in a section 2255 motion, even if he could have raised the same claim on direct appeal. *Massaro v. United States*, 538 U.S. 500, 504 (2003). This exception to the procedural-default rule exists to prevent petitioners from being forced "to raise the issue before there has been an opportunity fully to develop the factual predicate for the claim." *Id.* Additionally, a petitioner's attorney may serve as counsel for both trial and appellate proceedings, and it is unlikely that the attorney

6

would raise a claim of his own ineffective assistance on appeal.  *See United States v. Rashad*, 331 F.3d 908, 911 (D.C. Cir. 2003).

To establish ineffective assistance of counsel, a petitioner "faces a heavy burden." *DeRoo v. United States*, 223 F.3d 919, 925 (8th Cir. 2000) (quoting *United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996)).  He must show both that his counsel's performance was deficient and that the deficient performance prejudiced the petitioner's case.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *United States v. Sera*, 267 F.3d 872, 874 (8th Cir. 2001).  An attorney's performance is deficient only if it falls "below an objective standard of reasonableness."  *Strickland*, 466 U.S. at 687–88; *see also Sera*, 267 F.3d at 874.  Two substantial impediments exist to making such a showing.  First, "a 'strong presumption'" exists "that counsel's conduct falls within the wide range of reasonable professional assistance." *United States v. Rice*, 449 F.3d 887, 897 (8th Cir. 2006) (quoting *Strickland*, 466 U.S. at 689).  Second, "[s]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable."  *Id.* (quoting *Strickland*, 466 U.S. at 690).

## IV.    Discussion

Clark raises two statutory claims, thirteen ineffective-assistance-of-counsel claims, four prosecutorial-misconduct claims, and three claims of various miscellaneous errors.  *See generally* civ. doc. 11.  The Court addresses each claim in turn.

### A.    Statutory claims

Clark raises two statutory claims.  First, Clark challenges the "taking" element of his first carjacking conviction in Count 2.  Civ. doc. 11 at 2, 4.  Clark explains that the "initial taking of [the] vehicle did not meet the requirements of carjacking."  *Id.* at 4.  But Clark concedes that he raised this argument on appeal, *id.* at 5; *see also* Appellant's Br. at 20–27, *United States v. Clark*,

7

115 F.4th 895 (8th Cir. 2024) (No. 23-2320), and the Eighth Circuit rejected his argument, *see*

*Clark*, 115 F.4th at 898–900.  Clark cannot relitigate claims under section 2255 that "were raised

and decided on direct appeal." *United States v. Lee*, 715 F.3d 215, 224 (8th Cir. 2013) (citation

omitted).  The same is true of Clark's second statutory claim.  Clark challenges the "satisfaction

of the [i]ntent element of Count 4 and the causing of of [sic] [d]eath or [b]odily harm."  Civ. doc.

11 at 5.  But again, Clark concedes that he raised this argument on direct appeal, *id.*; *see also*

Appellant's Br. at 28–32, *Clark*, 115 F.4th 895 (No. 23-2320).  And the Eighth Circuit rejected

his argument.  *Clark*, 115 F.4th at 900.  The Court therefore denies without a hearing Clark's

motion for his statutory claims.

## B.    Ineffective-assistance-of-counsel claims

Clark alleges thirteen separate ineffective-assistance-of-counsel claims.  *See* civ. doc. 11

at 7–8, 20–21.  To prevail, Clark must show that (i) "trial counsel's performance was so deficient

as to fall below an objective standard of reasonable competence" and (ii) "the deficient

performance prejudiced his defense." *Nave v. Delo*, 62 F.3d 1024, 1035 (8th Cir. 1995) (citation

omitted).  The Court addresses each claim in turn.

### 1.    Failure to challenge interstate nexus

Clark claims that his counsel failed to challenge "the interstate commerce of evidence."

Doc. 11 at 7.  But Clark stipulated that each vehicle involved in the carjackings was

manufactured outside Missouri and had been transported in interstate commerce before the

relevant dates in this case.  Crim. doc. 76 at ¶¶ 1–3.  Clark also stipulated that the stolen

firearm—which a jury later convicted Clark of possessing, *see Clark*, 115 F.4th at 897–98—was

manufactured outside Missouri and had been transported in interstate commerce before the

relevant dates in this case.  Crim. doc. 76 at ¶ 4.  And at trial, Clark confirmed under oath that he:

8

(i) read the entire stipulation, (ii) reviewed it with his attorneys, (iii) had his attorneys answer any questions that he had about the stipulations before he signed it, and (iv) understood everything in it before he signed it.  Crim. doc. 126, Trial Tr. at 16:21–17:17.  The Court therefore found that Clark knowingly and voluntarily entered in the stipulation.  *Id.* at 17:18–17:20.  Clark cannot blame counsel for a choice that Clark knowingly and voluntarily made.  *See United States v. Orr*, 636 F.3d 944, 955 (8th Cir. 2011) (rejecting claim that counsel was ineffective for discouraging defendant from testifying where the Court engaged defendant in an "elaborate discussion" regarding his right to testify, and defendant knowingly waived that right).  The Court therefore denies without a hearing Clark's first ineffective-assistance-of-counsel claim.

### 2.    Disagreement over counsel's defense

Clark claims that his counsel presented the jury with the wrong defense.  Civ. doc. 11 at 7–8; civ. doc. 20 at 6.  Clark states that counsel advised him to "admit to taking the bag out of the vehicle, which [he] did not!  [He] found the bag on a fence."  Civ. doc. 11 at 8.  The Court assumes that Clark refers to when the SLMPD arrested him on May 26, 2021, they recovered a Purina backpack that held several items belonging to the carjacking victims.  Crim doc. 107 at ¶¶ 25, 26, 29.  At closing arguments, counsel explained away Clark's possession of items from all the carjackings:

> So then when Drew Clark is found, he is found with a backpack.  He is found with a number of small items that were found in the backpack.  One of the things that wasn't found in the backpack, though, were the Subaru keys.  That's important. The Subaru keys were in the floorboard of the Subaru.  What does that tell us?  The Subaru was open.  Could easily have been opened.  We have heard testimony about car thefts, car break-ins in the Soulard area.  Drew Clark had the opportunity to break into that Subaru and take things of value.  He grabbed a few things, looked through the laptop case to see if there's anything valuable and made off with what he could find.  He found a red t-shirt, swapped it out -- the gray shirt and put on the red t-shirt.  That's his opportunity.

Crim. doc. 130, Trial Tr. at 51:17–52:5.  In short, Clark's counsel argued that Clark didn't carjack at gunpoint Purina employee Maneesh Anand in his Subaru, *contra Clark*, 115 F.4th at 897; he merely broke-in to the Subaru and stole the Purina backpack left by the real carjacker, *see* crim. doc. 130, Trial Tr. at 51:17–52:5.

The Court liberally construes Clark's claim as follows.  *Archuleta v. Hedrick*, 365 F.3d 644, 648 (8th Cir. 2004) ("Pro se habeas petitions should be liberally construed.").  Clark claims that instead of arguing that he broke-in to the Subaru and stole the Purina backpack left by the real carjacker, his counsel should have argued that someone else committed the carjacking.  *See* civ. doc. 11 at 8.  Clark therefore claims that his counsel should have argued that he merely "found the [black Purina backpack] on a fence."  *Id.*

But the jury heard victim Maneesh Anand's testimony.  Anand testified that he left work early on the day in question to join a happy hour with a few friends.  Crim. doc. 129, Trial Tr. 11: 2–11:3.  He stated that he walked to his Subaru and got in the car.  *Id.* at 11:20–12:14.  But when Anand tried to close the door, he "felt something obstructing the door closure."  *Id.* at 12:16–12:17.  He then "heard someone's voice saying, 'Give me your car keys or I will shoot.'"  *Id.* at 12:17–12:19.  Anand got out of the car and saw a "male" "dark skinned" adult wearing items "typically used [at] [Purina]."  *Id.* at 13:10–13:19.  The carjacker was wearing a "surgical mask," *id.* at 41:22–43:3, but because Anand was about three feet from the carjacker, he could see that the carjacker "ha[d] really big hollow eyes" and he could see the carjacker's "nose[-]bridge area, his ears, and [his] forehead."  *Id.* at 16:1–16:9.  After a struggle, Anand gave the carjacker his keys, and the carjacker drove away.  *Id.* at 13:20–16:14.

Soon after, the police arrived and asked Anand to come with them to Soulard.  *Id.* at 16:23–18:15.  The police had arrested a suspect there—Clark—who Anand identified as the

10

carjacker. *Id.* at 18:15–20:12. Clark's counsel exerted considerable efforts cross-examining Anand and his identification of Clark as his carjacker. *Id.* at 50:19–58:13. Presented with testimony that identified Clark as the carjacker, the Court finds that counsel's efforts to cast doubt on Anand's identification was not "so deficient as to fall below an objective standard of reasonable competence." *Nave*, 62 F.3d at 1035.

And even if counsel's performance was deficient in this regard, Clark suffered no prejudice. The jury also saw Clark on the Purina surveillance video wearing a Purina employee's clothes. *See* crim. doc. 128, Trial Tr. at 207:4–211:25. The jury then saw evidence from a doorbell camera showing Clark minutes before his arrest wearing the same clothes. *See* crim. doc. 129, Trial Tr. at 126:15–131:4. They also saw the doorbell camera show Clark holding one backpack and wearing another backpack on his back. *Id.* at 131:5–131:8. Finally, the jury saw an officer's body-camera video of Clark's arrest, in which Clark had a black Purina backpack. *Id.* at 154:24–161:10. The Court finds that because the United States presented the jury with overwhelming evidence of Clark's guilt, his counsel's defense did not prejudice the outcome. *See Christenson*, 598 F.3d 900, 997 (8th Cir. 2010) (holding that "[w]hen there is overwhelming evidence of guilt presented, it may be impossible to demonstrate prejudice"). The Court therefore denies without a hearing Clark's second ineffective-assistance-of-counsel claim.

### 3. Counsel alleged advice that Clark shouldn't testify in his own defense

Clark claims that his counsel's advice that he shouldn't testify constituted ineffective assistance of counsel. Civ. doc. 11 at 7. Clark states that he would have testified that he found the black Purina bag on a fence and not in Anand's Subaru. *See id.* at 8. But the Eighth Circuit has consistently "affirmed that a defense counsel's decision not to call a witness is a virtually unchallengeable decision of trial strategy." *Jackson v. United States*, 956 F.3d 1001, 1008 (8th

11

Cir. 2020) (citations omitted).  "[T]here is considerable risk inherent in calling any witness because if the witness does not hold up well on cross-examination, the jurors might draw unfavorable inferences."  *Rodela-Aguilar v. United States*, 596 F.3d 457, 464 (8th Cir. 2010).

The Court also engaged Clark in "an elaborate discussion concerning his right to testify." *Orr*, 636 F.3d at 955.  The Court confirmed with Clark that he talked with his attorneys "a few times at least during the course of the trial about whether [he] would testify[.]"  Crim. doc. 129, Trial Tr. at 305:24–306:3.  The Court then confirmed with Clark that he understood that he "has a right to testify at trial but [he] also ha[s] a right not to testify at trial."  *Id.* at 306:4–306:7.  The Court also confirmed with Clark that he understood that no one can force him to testify and that his decision to testify was "solely a decision for [him] to make in consultation with [his] counsel."  *Id.* at 306:8–308:15.  Finally, the Court confirmed that Clark had enough time to discuss his decision with counsel, and he responded "[a]ffirmative, Your Honor. . . . [t]he decision I have chosen to make is that I will stick with the recommendation of my counsel and I will not testify[.]"  *Id.* at 306:16–306:23.  The Court therefore found that Clark knowingly and voluntarily waived his right to testify.  *Id.* at 307:6–307:10.  Clark cannot blame counsel for a choice that Clark knowingly and voluntarily made.  *See Orr*, 636 F.3d at 955.  The Court therefore denies without a hearing Clark's third ineffective-assistance-of-counsel claim.

### 4.    Alleged violation of Missouri's Second Amendment Preservation Act

Clark claims that his counsel was ineffective because of Missouri's "2nd Amendment presaration [sic] Act, using state evidence and witnesses to convict in federal court."  Civ. doc. 11 at 7; *see also* civ. doc. 20 at 9.  But Clark's counsel raised a pretrial challenge under the Missouri Second Amendment Preservation Act to prevent state and local law enforcement from testifying.  Crim. doc. 57.  The United States responded to the motion, crim. doc. 74, and the

Court denied it, crim. doc. 79.  The Court therefore denies without a hearing Clark's fourth ineffective-assistance-of-counsel claim.

### 5.    Alleged failure to present evidence of Clark's status as a combat veteran

Clark states that he is a "combat veteran" and that his counsel "at [his] request, asked the Judge/Court, to look at this issue, and it was dismissed with prejudice."  Civ. doc. 11 at 8.  The Court questions what Clark refers to, but counsel raised his military service at sentencing as a mitigating factor, crim. doc. 131, Sent'g Tr. at 23:24–27:25, and the Court considered Clark's military service when deciding his sentence, *id.* at 42:7–49:16.

And to the extent that Clark argues that his counsel should have argued at trial for a diminished capacity affirmative defense, counsel investigated the issue, doc. 49 at ¶¶ 3–5; doc. 124, Mot. Hr'g 2:23–15:14, and Clark decided not to raise it, crim. doc. 54.  The Court therefore denies without a hearing Clark's fifth ineffective-assistance-of-counsel claim.

### 6.    Alleged failure to advise Clark of the evidence against him

Clark claims that he received ineffective assistance of counsel because "[a]ll of the evidence was not made available to me pre, during, and post trial [sic] and conviction."  Civ doc. 11 at 8.  But Clark fails to specify what evidence counsel failed show him, and how counsel's failure to show him "all of the evidence" would have affected counsel's trial strategy, or how it would have altered the proceeding's result.  *See Strickland*, 466 U.S. at 687–90.  Courts must dismiss claims that are "based solely on vague, conclusory, or palpably incredible allegations or unsupported generalizations."  *Spillers v. Lockhart*, 802 F.2d 1007, 1009 (8th Cir. 1986) (citations omitted) (cleaned up); *see also Voytik v. United States*, 778 F.2d 1306, 1308 (8th Cir. 1985).  And the Court will not supplement facts to make Clark's claim legally viable.  *Cf. Stone*

13

*v. Harry*, 364 F.3d 912, 915 (8th Cir. 2004).  The Court therefore denies without a hearing Clark's sixth ineffective-assistance-of-counsel claim.

### 7.       Alleged failure to advise Clark of the penalties he faced

Clark claims that he was told that he "would be given 3 years for brandishing and 4 years for robbery[,] a total of (7) seven years for each crime[,] a total of 21 years."  Doc. 11 at 8.  But the record contradicts Clark's claims.

During Clark's *Frye* hearing, the Court stated that it "wanted to make sure Mr. Clark underst[ood]" that he would face three mandatory seven-year terms that are consecutive to each other.  Crim. doc. 125, *Frye* Hr'g Tr. at 5:6–5:16.  Clark confirmed under oath that he understood.  *Id.* at 5:17.  The Court then explained that "on top of that, if you are convicted on the other counts, any sentence on those other counts would go on top of that 21 years."  *Id.* at 5:18–24.  Clark again confirmed that he understood.  *Id.* at 5:25.

The Court also explained to Clark that if he pleaded guilty, "the United States would dismiss one of those three counts that gets you seven mandatory years."  *Id.* at 6:2–6:3.  And Clark confirmed that he understood.  *Id.* at 6:10–6:12.  The Court then explained that "if [he] took the [plea] deal, the United States estimates that [his] guidelines range would be between 209 and 219 months."  *Id.* at 9:20–10:16.  Clark then conferred with counsel, confirmed his understanding of the possible sentencing ranges, but still sought to proceed to trial.  *Id.* at 10:17–13:11.  The record contradicts Clark's claims.  The Court therefore denies Clark's claim of ineffective assistance of counsel without a hearing.  *See Smith v. Lockhart*, 921 F.2d 154, 157 (8th Cir. 1990) ("Solemn declarations in open court carry a strong presumption of verity." (citation omitted)).  The Court therefore denies without a hearing Clark's seventh ineffective-assistance-of-counsel claim.

14

### 8. Alleged failure to move for a dismissal based on a lack of identification

Clark claims his counsel was ineffective for failing to move to dismiss his charges "when no [p]ositive [i]dentification was made on the stand by any of the Governments [sic] experts, or witnesses, or victims. A pure lack of evidence." Civ. doc. 11 at 8. But Clark's counsel appropriately challenged the strength of the evidence at trial, moving for acquittal on all counts. Crim. doc. 129, Trial Tr. at 302:11–304:3. And Clark's counsel exerted considerable efforts challenging the reliability of Clark's identification at trial, *id.* at 36:1–60:5, and in closing argument, crim. doc. 130, Trial Tr. at 48:16–59:17. The Court therefore denies without a hearing Clark's eighth ineffective-assistance-of-counsel claim.

### 9. Alleged failure to sever counts

Clark claims that he was denied effective assistance of counsel because "no motion was filed for a request of severance of charges." Civ. doc. 11 at 20. Again, Courts must dismiss claims that are "based solely on vague, conclusory, or palpably incredible allegations or unsupported generalizations." *Spillers*, 802 F.2d at 1009 (cleaned up); *see also Voytik*, 778 F.2d at 1308. Clark does not explain how he believes counsel should have requested severance, or how counsel's failure to seek severance of counts prejudiced the proceedings. *See* civ. doc. 11.

Under Federal Rule of Criminal Procedure 14(a), "[i]f the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant . . . the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." Fed. R. Crim. P. 14(a). But "[a] defendant cannot show prejudice when evidence of the joined offense would be properly admissible in a separate trial for the other crime." *United States v. Boyd*, 138 F.4th 1079, 1083 (8th Cir. 2025). The Court fails to see—and Clark fails to explain—why evidence from each criminal act during his

15

day-long crime spree would be inadmissible in a separate trial for the other crimes.  *See United States v. Young*, 753 F.3d 757, 770 (8th Cir. 2014) (explaining that intrinsic evidence is admissible under the Federal Rules of Evidence).  The Court therefore denies without a hearing Clark's ninth ineffective-assistance-of-counsel claim.

### 10.    Alleged failure to challenge the Court's jurisdiction

Clark claims that counsel failed to challenge the Court's jurisdiction.  Doc. 11 at 20.  But Clark cannot fault counsel for his failure to raise a meritless argument.  *See Dodge v. Robinson*, 625 F.3d 1014, 1019 (8th Cir. 2010) (holding that counsel's failure to raise a meritless argument does not constitute ineffective assistance of counsel).  The Court has "original jurisdiction . . . of all offenses against the laws of the United States."  18 U.S.C. § 3231.  Clark was indicted for, crim. docs. 1–2, and found guilty of, several federal offenses, crim. doc. 94.  The Court therefore denies without a hearing Clark's tenth ineffective-assistance-of-counsel claim.

### 11.    Counsel's alleged failure to move to suppress evidence

Clark claims that "Diana [sic] Dragan erred when she did not provide effective Right to Counsel, by not pursuing Fed. Rule 12(b)(c)."  Doc. 11 at 20.  Because Federal Rule of Criminal Procedure 12(b)(c) doesn't exist, the Court construes Clark's claim under Rule 12(b)(3)(C) as alleging that Dragan was ineffective by not filing a motion to suppress.  Still, Clark's claim lacks merit.  On July 20, 2021, Clark appeared in court for the first time for his initial appearance and arraignment.  Crim. doc. 8.  Assistant Federal Public Defender Diane Dragan appeared on Clark's behalf to assist Clark with his initial appearance and arraignment.  *Id.*  After that hearing,

but on the same day, Assistant Federal Public Defender Kevin Gau entered an appearance for

Clark, crim. doc. 12, and represented Clark for the rest of the proceedings.

Clark cannot fault Dragan for not filing a motion to suppress before the United States

made any discovery available. Further, Clark had until July 5, 2022—when he waived pretrial

motions, doc. 43—to file a motion to suppress. Any failure by Dragan to not file a motion to

suppress on the day of arraignment did not prejudice Clark's ability to later file a motion to

suppress. The Court therefore denies without a hearing Clark's eleventh

ineffective-assistance-of-counsel claim.

### 12.    Alleged failure to raise Speedy-Trial claim

Clark claims that counsel was ineffective by "waiving the defendant[']s right to a speedy

trial." Civ. doc. 11 at 21. Clark's claim lacks merit. Clark personally waived his Speedy Trial

rights on two separate occasions. Crim. docs. 47, 50. The day after Clark filed his second

motion to waive speedy-trial rights, the Court had the following discussion with Clark:

> THE COURT: Okay. So I understand that you have now twice signed a speedy
> trial waiver; is that right?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: So do you understand -- when you signed that waiver, did you
> understand that you have rights under the Speedy Trial Act to a trial within a certain
> number of days and that by waiving that you are giving up that right to insist upon
> having a trial within a certain number of days?
>
> THE DEFENDANT: Yes, Your Honor. If I'm not mistaken it's 70 days, I believe.
>
> THE COURT: Yeah, the way it gets counted is kind of – there's some days that
> get counted and some days that don't but, you know, you are in the right ballpark
> there. That said, are you asking me to postpone or continue the trial date?
>
> THE DEFENDANT: Yes, Your Honor. And in hopes that my attorney could better
> defend me with the situation that's going on because I consider it to be very serious
> accusations and I do take them very seriously, Your Honor.

THE COURT:  Say that last part again.

THE DEFENDANT:  I do take them very serious, Your Honor.

THE COURT:  I understand.  So you are voluntarily waiving your rights under the Speedy Trial Act?

THE DEFENDANT: Yes, Your Honor.

THE COURT: All right.  So I find that the ends of justice would be best served by the waiver of a speedy trial and that waiver here postponing trial outweighs the best interest of the public including the victims in this case and the defendant to a speedy trial.

Crim. doc. 124, Trial Tr. at 14:7–15:11.  Clark cannot blame counsel for a choice that he knowingly and voluntarily made.  *See Orr*, 636 F.3d at 955 (rejecting claim that counsel was ineffective for discouraging defendant from testifying where the Court engaged defendant in an "elaborate discussion" regarding his right to testify, and defendant knowingly waived that right). The Court therefore denies without a hearing Clark's eleventh ineffective-assistance-of-counsel claim.

### 13. Alleged failure to object to motions in limine

Finally, Clark claims that his counsel was ineffective "by not objecting to the government's motions in limine, which would have given the defendant, a better chance of favorable outcome."  Civ. doc. 11 at 21.  The United States filed two motions in limine:  (i) to admit evidence of other crimes, wrongs, and acts under Federal Rule of Evidence 404(b), crim. doc. 61, and (ii) to prohibit Clark's counsel from presenting undisclosed alibi and insanity defenses under Federal Rule of Criminal Procedure 12.1 and 12.2, crim. doc. 62.

Clark's counsel was not ineffective by failing to object to either of these motions in limine.  Regarding the first motion in limine, the United States told the Court that it planned to use the evidence only to prove identity.  *See* crim. doc. 126, Trial Tr. at 5:18–6:16; *see also*

18

*United States v. Williams*, 308 F.3d 833, 837 n.4 (8th Cir. 2002) (holding that evidence of prior acts is permissible to prove identity under Rule 404(b)). And regarding the second motion in limine, the Court noted above that Clark's counsel filed a notice that Clark would not be asserting a diminished-capacity defense at trial. *Supra* IV.B.5.; *see also* crim. doc. 54. Clark cannot blame counsel for not filing futile objections. *See Dodge*, 625 F.3d at 1019 (holding that counsel's failure to raise a meritless argument cannot constitute ineffective assistance of counsel). The Court therefore denies without a hearing Clark's final ineffective-assistance-of-counsel claim. Having addressed Clark's claims of ineffective assistance of counsel, the Court turns to his prosecutorial-misconduct claims.

## C.     Prosecutorial-misconduct claims

Clark alleges three prosecutorial–misconduct claims. Civ. doc. 11 at 22. The Court addresses each claim in turn.

### 1.     Alleged misconduct for using identical State case discovery

Clark claims the United States violated *Brady v. Maryland*, 373 U.S. 83, 87 (1963) when the United States "did not produce its own discoverable material, relying on State evidence and State witnesses." Civ. doc. 11 at 22. To prove a *Brady* violation, Clark must show that the United States knowingly suppressed material evidence favorable to Clark and its disclosure would have altered the proceeding's result. *United States v. Beckman*, 787 F.3d 466, 492 (8th Cir. 2015). Clark fails to show how the United States' reliance on evidence presented in state court equates to knowingly suppressing material evidence that would have altered the proceeding's result. *See id.*; *see generally* civ. doc. 11. The Court therefore denies without a hearing Clark's claim of prosecutorial misconduct.

### 2.    Alleged misconduct for the missing exculpatory statement

Clark claims that the United States violated *Brady* when it failed to produce a "sworn affidavit from a sworn witness, casting doubt as to the identification of the accused assailant . . . which is consider [sic] exculatory [sic] evidences [sic]."  Civ. doc. 11 at 22.  Clark's claim lacks merit.  He fails to identity the (i) purportedly exculpatory witness, (ii) how the witness's statement would cast doubt on his identification, (iii) when the supposed affidavit was made, or (iv) when the United States came into possession of the supposed affidavit.  *See id.*  The Eighth Circuit has "made clear that mere speculation that materials may contain exculpatory evidence is not . . . sufficient to sustain a Brady claim."  *United States v. Wadlington*, 233 F.3d 1067, 1077 (8th Cir. 2000) (citation modified).  The Court therefore denies without a hearing Clark's claim of prosecutorial misconduct.

### 3.    Alleged misconduct in United States' appeal brief's formatting errors

Clark claims that the United States' "erred when [it] did not produce a brief . . . that complied with the [Federal Rules of Appellate Procedure and Eighth Circuit Local Rules].  Civ. doc. 11 at 22.  The Court rejects Clark's frivolous argument.  Citation errors in an appellate brief—that the United States then corrected, *see* Appellee Br., *Clark*, 115 F.4th 895 (No. 23-2320)—cannot serve as a ground for relief under section 2255.  *See Jackson*, 495 F.2d at 351.  The Court therefore denies without a hearing Clark's claim of prosecutorial misconduct.

### D.    Remaining claims

Clark raises three other meritless claims for relief.  *See* Civ. doc. 11 at 23.  First, Clark claims that a "probation/pretrial officer . . . erred in his actions by releasing the bail report."  *Id.*  But under 18 U.S.C. § 3153(c)(1), a bail report may be released to "the attorney for the accused and the attorney for the Government."  If Clark suggests that the "probation/pretrial officer"

20

released the bail report beyond the permissible parties outlined in section 3153(c), his conclusory assertion has no support in the record. *See Spillers*, 802 F.2d at 1009. Second, Clark claims that "all 3 appeal[-]court judges, did not participate in the consideration or decision of the petition for panel rehearing." Civ. doc. 11 at 23. Clark again fails to allege any legal error cognizable as a basis for relief under section 2255. *See Jackson*, 495 F.2d at 351. Third, Clark claims the United States violated his Sixth Amendment rights to counsel when he was denied counsel at the return of his indictment. Civ. doc. 11 at 23. But the Sixth Amendment's right to counsel "attaches at the initial appearance before a judicial officer." *See Rothgery v. Gillespie Cnty.*, 554 U.S. 191, 199 (2008). The grand jury returned a true bill on July 14, 2021. *See* crim. doc. 1. And at his initial appearance a week later, Diane Dragan appeared in his defense. *See* crim. doc. 8. Clark suffered no Sixth Amendment violation. The Court therefore denies without a hearing Clark's remaining claims.

## V.    Certificate of appealability

For the Court to issue a certificate of appealability, Clark must make a substantial showing that he suffered the denial of a constitutional right. *See Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997). A substantial showing means one indicating that reasonable jurists could debate the issues, a court could resolve the issues differently, or the issues deserve further proceedings. *Id.* But as shown in the discussion above, Clark has not made such a showing. The Court therefore declines to issue a certificate of appealability in this case.

21

## VI.    Conclusion

The Court finds that the record conclusively establishes Clark fails to show entitlement to relief or an evidentiary hearing under 28 U.S.C. § 2255.  Accordingly, the Court denies Clark's [1] [11] Motion to Vacate, Set Aside, or Correct Sentence.  A separate judgment accompanies this memorandum and order.

So ordered this 17th day of June 2026.

_____
STEPHEN R. CLARK
CHIEF UNITED STATES DISTRICT JUDGE